**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RICHARD L. GRUBER,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>KAREN GEDNEY, *et al.,*<br><br>　　　　　　Defendants. | 3:15-cv-00543-RCJ-VPC<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (ECF Nos. 67, 69 (sealed)). Plaintiff opposed (ECF No. 91), and defendants replied (ECF No. 99). The court recommends that defendant's motion for summary judgment (ECF No. 67) be granted in part, and denied in part, as detailed below.

### I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Richard Gruber ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and currently housed at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff brings this action against Dr. Karen Gedney ("Dr. Gedney"), Dr. Romeo Aranas ("Dr. Aranas"), Dr. Dana Marks ("Dr. Marks") (collectively "defendants"). (*See* ECF No. 34).

According to plaintiff's first amended complaint, the alleged events giving rise to plaintiff's claim are as follows. (*Id.*) Plaintiff alleges that he was diagnosed with Parkinson's Disease ("PD") before being incarcerated on March 11, 2005. (*Id.* at 5.) He immediately put the NDOC on notice of his diagnosis. (*Id.*) Beginning in June 2014, the severity of plaintiff's symptoms increased exponentially in severity, such that plaintiff is often unable to eat food, brush his teeth, shave his face, walk to the dining halls and bathrooms, or sleep. (*Id.* at 6.) Plaintiff complains that due to

his difficulty walking, "several times [he has] been battered by other prisoners when he lost his balance and stumbled into other prisoners." (*Id.*)

Plaintiff notified Dr. Gedney about his worsening PD symptoms, but Dr. Gedney refused to provide medical treatment in response to plaintiff's complaints or take any steps to protect plaintiff. Plaintiff asserts that Dr. Gedney made the following statements: "[PD] is expensive to treat. If we [NDOC medical personnel] don't diagnose [PD], we don't have to treat you for [PD]," "there is no medication that will help, you will have to deal with it," and, "doctors that cost the NDOC a lot of money treating prisoners don't last long." (*Id.*)

In 2016, plaintiff began seeing his new doctor — Dr. Marks. (*Id.*) Plaintiff told Dr. Marks at several of his medical appointments about his severe symptoms and their effect on his daily life, but Dr. Marks refused to provide medical treatment in response to plaintiff's complaints or take any steps to protect plaintiff. (*Id.*) However, plaintiff asserts that Dr. Marks has said that "there's no doubt you have [PD]," but that plaintiff should try to "hang tight until you're released from prison" before seeking treatment. (*Id.*)

As a result of Dr. Gedney and Dr. Marks's refusal to treat plaintiff's PD, plaintiff continues to suffer a decline in his physical functioning. (*Id.* at 7-8.) Specifically, he alleges that he experiences extreme mental and psychological anguish, extreme hunger at times when he is unable to walk to the dining facility, and has been subjected to additional altercations with other prisoners due to his difficulty walking and inability to take care of his personal hygiene. (*Id.*)

Finally, plaintiff claims that Dr. Aranas has known that plaintiff is suffering from severe symptoms of PD since 2015. (*Id.* at 8.) Yet, Dr. Aranas has failed to provide or authorize any treatment for plaintiff's PD. (*Id.*) Plaintiff further alleges that many of his medical kites concerning his PD have been ignored. (*Id.*) Based on these allegations, plaintiff brings an Eighth Amendment claim of deliberate indifference to his serous medical needs against Dr. Gedney, Dr. Marks, and Dr. Aranas. (*Id.*) He seeks monetary damages from each defendant, declaratory relief, costs, and injunctive relief requiring NDOC to properly treat his PD and provide plaintiff with a long handle toothbrush and an electric shaver. (*Id.* at 9.)

On March 3, 2016, the District Court entered a screening order pursuant to 28 U.S.C. § 1915, allowing plaintiff to proceed with his Eighth Amendment deliberate indifference claim against defendants. (ECF No. 7.) Defendants now moves for summary judgment based on the following: 1) Plaintiff's claims are barred by the statute of limitations because he did not file his complaint until over ten years after his Eighth Amendment deliberate indifference claim accrued; 2) Plaintiff failed to exhaust his administrative remedies because he did not file his grievance until more ten years after his intake at NNCC; 3) Dr. Aranas did not personally participate in the alleged deprivation of medical treatment; 4) Plaintiff's Eighth Amendment claim will fail on the merits because he was diagnosed with Parkinsonism rather than PD, and prescribed medical therapy based on this diagnosis; and 5) even if an Eighth Amendment violation occurred, defendants are entitled to qualified immunity. (ECF No. 67.) Plaintiff opposed (ECF No. 91), and defendants replied (ECF No. 99.) The recommended disposition follows.

## II.     LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the

court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under

penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.   DISCUSSION
#### A.   Failure to Exhaust Administrative Remedies
##### 1.   Exhaustion under the PLRA

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90).

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendants bear the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendants make such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). When a remedy is essentially "unknowable" such that no reasonable inmate can make sense of what it demands, it is considered to be unavailable. *See Ross*, 136 S.Ct. at 1859-60.

##### 2.   NDOC's Inmate Grievance System

The procedural rules relevant to exhaustion "are defined not by the PLRA, but by the prison grievance process itself." *Bock*, 549 U.S. at 218. The grievance process at NDOC institutions is governed by Administrative Regulation ("AR") 740.

NDOC's grievance process features three levels, beginning with the informal grievance. If an inmate is unable to resolve the issue through discussion with an institutional caseworker, the inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims," or within ten days for any other issues, including classification and disciplinary.  AR 740.04, 740.05(4).  The inmate's failure to submit the informal grievance within this time frame "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." *Id.* at 740.05(8).  NDOC staff is required to respond within forty-five days. *Id.* at 740.05(12).  An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. *Id.*

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." *Id.* at 740.06(2).  The grievance is reviewed by an official of a higher level, who has forty-five days to respond. *Id.* at 740.06(1), (4).  Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. *Id.* at 740.07(1).  Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached. *Id.* at 740.07(3), (4). Once an inmate receives a response to the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

### 3. Exhaustion of Plaintiff's Claim

Plaintiff's claim against defendants concerns an alleged failure to diagnose and correctly treat his PD.  (*See* ECF No. 34 at 4-5.)  Defendants argue that plaintiff did not properly exhaust his available administrative remedies, as the only grievance he filed that requested treatment for his PD was not timely filed within the six-month timeframe mandated by AR 740.05(4)(A).  (ECF No. 67 at 13; Def. Exh. N at 7.)  Plaintiff claims to have been denied treatment for his PD since he become incarcerated in March 11, 2005.  (*Id.* at 67) (citing ECF No. 34 at 3.)  However, defendants provide plaintiff's grievance history to show that his only grievance on the issue was filed on April 13, 2015 – over ten years later.  (Def. Exh. M at 2.)

Plaintiff responds that NDOC physicians met with plaintiff on more than ten occasions about his neurological disorder from 2005 to 2015, and that "promises were made to address the issue each time until Dr. Gedney told [him] that [he] would receive no treatment at all, due to cost, in 2014-15." (ECF No. 91 at 15.)   As such, plaintiff argues that defendants' refusal to diagnose and treat plaintiff's PD during those appointments was a continuing violation of the Eighth Amendment. (*Id.*) Because this "continuing wrong" took place from 2005 to 2015, his grievance was timely filed. (*Id.* at 15-16) (citing *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001)). Defendants counter that plaintiff should have known that he would not be referred to a neurologist on September 23, 2005, that date on which Dr. Gedney definitely diagnosed plaintiff with Parkinsonism rather than PD. (ECF No. 99 at 13.)

The court need not consider plaintiff's continuing wrong theory to find that plaintiff timely exhausted his administrative remedies.   From 2005 to 2015, plaintiff avers that he was dissuaded from bringing a claim because "the NDOC kept promising to have him examined and treated." (ECF No. 91 at 15.) He would have little cause to file a grievance against defendants for inadequate medical care or incorrect medical judgment while under the belief that further examination, and possibly treatment, was forthcoming. This is especially true given his claim that his symptoms escalated only gradually until June 2014, at which point they "increase[ed] exponentially and his ability to function was diminishing rapidly." (ECF No. 34 at 6.) Then, sometime between 2014 and 2015, Dr. Gedney made clear to plaintiff that he would not receive further testing and treatment for PD due to budgetary constraints. (*Id.*) Furthermore, her alleged statements suggested that she improperly diagnosed plaintiff with Parkinsonism, or otherwise refused to evaluate and treat plaintiff for PD, in order to avoid losing her job. (*Id.*) (alleging that Dr. Gedney told plaintiff "doctors that cost the NDOC a lot of money treating prisoners don't last long.")

From what the court can discern, it was not until plaintiff realized that he was never going to be diagnosed and treated for PD, and that his diagnosis may have been made for non-medical reasons, that he had sufficient information to file his grievance. (ECF No. 91 at 13.) Plaintiff does

1  not assign exact dates to Dr. Gedney's alleged statements, but it is entirely possible from plaintiff's
2  account that Dr. Gedney told plaintiff that he would not receive treatment for PD on or after
3  October 13, 2014, and that plaintiff's grievance, which was filed on April 3, 2015, falls within six
4  months of Dr. Gedney's statements.  (Def. Exh. M at 2.)   Defendants do not dispute plaintiff's
5  recollection of the promises and statements made to him, nor do they clarify the sequence of events
6  plaintiff offers. (*See* ECF No. 67 at 2) (denying only that defendants diagnosed plaintiff with PD
7  at any point in time); *see also United States v. Stein*, 881 F.3d 853, 858 (11th Cir. 2018) (a
8  litigant's self-serving statements based on personal knowledge or observation can defeat summary
9  judgment); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Because there is a genuine
10 dispute as to whether plaintiff's grievance was timely filed, defendants have not carried their
11 burden of showing that plaintiff failed to timely exhaust his claim.  *Albino*, 747 F.3d at 1172
12 (acknowledging that failure to exhaust is an affirmative defense that the defendant must prove).

13         Additionally, defendants contend that plaintiff should not be able to proceed on his
14 allegation that defendants exhibited deliberate indifference by failing to refer plaintiff to a
15 neurologist for examination, diagnosis, and testing.  (ECF No. 99 at 13.)  Defendants acknowledge
16 that plaintiff states at the informal level that he "would like [his PD] treated using contemporary
17 medicine," but defendants assert that he did not request to be referred to a neurologist, nor put
18 NDOC on notice that referral would be necessary, thus rendering his grievance unexhausted as to
19 this allegation.  (*Id.*)

20         The court disagrees with defendants' contention that because plaintiff did not specifically
21 request an appointment with a neurologist in his grievance, he failed to properly exhaust his
22 administrative remedies.  A grievance is sufficient "if it alerts the prison to the nature of the wrong
23 for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin*,
24 557 F.3d at 1120).  The grievance "need not include legal terminology or legal theories" as its
25 "primary purpose… is to alert the prison to a problem and facilitate its resolution, not to lay
26 groundwork for litigation." *Griffin*, 557 F.2d at 1120.  Here, the gravamen of plaintiff's complaint
27 is that NDOC failed to diagnose and treat him for his PD symptoms.  (*See* ECF No. 34.)  Defendants
28

are correct that plaintiff's grievance demands treatment for PD without expanding upon his notion of proper treatment. (ECF No. 99 at 7.) However, notice of plaintiff's chief complaint that he had been misdiagnosed is implied by his demand for PD treatment. Similarly, plaintiff's claim of entitlement to a neurologist can be inferred from his grievance, insofar as his lack of PD-specific treatment was the function of defendants' inability or unwillingness to appropriately diagnose and treat him. While plaintiff focuses on defendants' refusal to refer plaintiff to a "trained expert" in his opposition to defendants' motion for summary judgment (ECF No. 91 at 11), this argument appears to be only symptomatic of his ultimate claim that the Parkinsonism treatment he received fell below constitutional standards. Nothing suggests that plaintiff would proceed on his claim if, in lieu of referring plaintiff to a specialist, defendants treated him for PD at some point before he filed suit. Accordingly, plaintiff provided NDOC with sufficient notice of his claim so summary judgment on the issue of exhaustion is not warranted. *Sapp*, 623 F.3d at 824.

**B.      Statute of Limitations under 42 U.S.C. § 1983**

    **1.      Legal Standard**

42 U.S.C. § 1983 does not contain a statute of limitations. Instead, federal courts apply the forum state's statute of limitations for personal injury claims. *Comm. Concerning Cmty. Improvement v. City of Modesto*, 853 F.3d 690, 701 n.3 (9th Cir. 2009). Thus, in Nevada, the statute of limitations for a § 1983 claim is two years. *See Rosales-Martinez v. Palmer,* 753 F.3d 890, 895 (9th Cir. 2014); Nev. Rev. Stat. § 11.190(4)(e). Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues. *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000). A claim based on deliberate indifference to a serious medical need accrues when the plaintiff knows or has reason to know of the defendants' deliberate indifference. *TwoRivers v. Lewis*, 174 F.3d 987, 991–92 (9th Cir. 1999).

    **2.      Application**

Much like their exhaustion argument, defendants argue that plaintiff's Eighth Amendment deliberate indifference claim is more than ten years old and therefore barred by the statute of limitations. (ECF No. 67 at 11-12.) In anticipation of plaintiff's opposition, defendants ask the

1  court not to treat plaintiff's claim as a continuing wrong because the "mere continuing impact from
2  past violations is not actionable." (*Id.* at 12) (citing *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir.
3  2012)).

4  But the *Pouncil* court also recognized that "a federal claim accrues when the plaintiff
5  knows or has reason to know of the injury that is the basis of the action." *Pouncil*, 704 F.3d at
6  574. As discussed above, plaintiff raises a genuine dispute that he did not know or have reason to
7  know that his diagnosis of Parkinsonism on September 23, 2005 forever foreclosed the possibility
8  that defendants would alter their diagnosis and treat plaintiff for PD, or send plaintiff to a
9  specialist. *Lavelle v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980) ("Until the plaintiff is in possession
10 of the 'critical facts that he has been hurt and who has inflicted injury,' the statute of limitations
11 does not commence to run.") (quoting *U.S. v. Kubrick*, 444 U.S. 111, 122 (1979)). In fact, he
12 asserts that NDOC medical staff made promises to the contrary. (ECF No. 91 at 15.) Nor did
13 plaintiff have reason to suspect that his initial diagnosis of Parkinsonism was based in part on
14 possibly improper motives that could give rise to an Eighth Amendment claim deliberate
15 indifference claim. *See Jones v. Johnson,* 781 F.2d 769, 771 (9th Cir. 1986) (finding that plaintiff
16 properly stated an Eighth Amendment deliberate indifference claim for damages and injunctive
17 relief where defendants denied plaintiff's surgery solely because of budgetary
18 concerns), *overruled on other grounds by Peralta v. Dillard,* 744 F.3d 1076 (9th Cir. 2014)
19 (consideration of budgetary constraints *may* constitute a reasonable basis to deny medical
20 treatment, depending on the circumstances, but only to defeat an Eighth Amendment deliberate
21 indifference claims for monetary damages against officials with no control over the budget).

22 Rather, plaintiff's Eighth Amendment claim appears to have accrued when Dr. Gedney
23 told plaintiff that PD "is expensive to treat" and that "doctors that cost the NDOC a lot of money
24 don't last long." (ECF No. 34 at 7.) Those statements provided plaintiff with notice that the
25 continued denial of diagnosis and treatment of his alleged PD was a "delayed, but inevitable"
26 result of Dr. Gedney's decision to diagnose plaintiff with Parkinsonism. *Pouncil v. Tilton*, 704
27 F.3d 568, 581 (9th Cir. 2012). According to plaintiff, Dr. Gedney's statements were made between
28

1  2014 and 2015 (ECF No. 91 at 15), and the record shows that he filed his claim on November 5, 2015 (ECF No. 1). Thus, a reasonable jury could find that plaintiff timely filed his complaint within the two-year statutory period. (ECF No. 1.) Summary judgment is improper on this basis.

**C.     Civil Rights Claims Under § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

**1.     Dr. Aranas Cannot Be Held Liable on a Theory of *Respondeat Superior***

The legal theory of *respondeat superior*, or vicarious liability, does not apply in an actions for civil rights violations pursuant to 42 U.S.C. § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). An individual or entity cannot be liable under section 1983 without an affirmative link or connection between the defendant's actions and the claimed deprivation. *May v. Enomoto*, 633 F.3d 165, 167 (9th Cir. 1980). In his opposition, plaintiff "concedes that no affirmative link or connection has been made between Aranas' [sic] acts and the plaintiff's alleged deprivations as presented in the plaintiff's amended civil rights complaint." (ECF No. 91 at 12.) After a thorough review of the record, the court agrees with defendants that Dr. Aranas involvement is limited to denying plaintiff's second level grievance on the basis of the medical records before him. (*See* ECF No. 67 at 11; Def. Exh. M at 3.) In the absence of any argument that Dr. Aranas's denial constituted deliberate indifference, the court recommends that Dr. Aranas be dismissed from this

action. *See* FED. R. CIV. P. 56(e)(2), (3).

### 2. Eighth Amendment Deliberate Indifference

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in the Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she

1  can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at
2  1066. An accidental or inadvertent failure to provide adequate care is not enough to impose
3  liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of
4  negligence at one end and purpose or knowledge at the other . . . ." *Farmer v. Brennan*, 511 U.S.
5  825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack
6  of due care." *Id.* at 835 (internal quotation omitted).

7  As to the objective element of the deliberate indifference test, defendants do not dispute
8  that plaintiff's neurodegenerative symptoms constituted a "serious medical need;" thus, this
9  element has been satisfied and the court will now address the subjective element.

10  As to the subjective element, plaintiff appears to claim that defendants have been
11  deliberately indifferent to his medical need for proper treatment, as they have refused to diagnose
12  and treat plaintiff with PD, or refer plaintiff to a specialist who is competent to diagnose plaintiff's
13  underlying illness. (ECF No. 34 at 5-8; *see* ECF No. 91 at1, 15-16.) Defendants raise a number
14  of arguments against a finding that they had culpable state of mind.

15  First, defendants argue that their diagnosis and course of treatment are not "so far afield of
16  accepted professional standards as to raise an inference of deliberate indifference … [i]n light of
17  the totality of care." (ECF No. 67 at 8) (quoting *Zackery v. Mesrobian*, 299 Fed. Appx. 598, 601
18  (7th Cir. 2008)). To support their argument, defendants provide a medical report by Dr. Doyle,
19  an independent neurologist. (Def. Exh. J.) On September 21, 2017, Dr. Doyle diagnosed plaintiff
20  with benign essential tremor, not PD. (*Id.*) Defendants provide evidence that benign essential
21  tremor is related to Parkinsonism. (Def. Exh. L.) Thus, defendants argue, Dr. Gedney's diagnosis
22  could not be "so far afield of accepted medical standards" because Dr. Doyle concurred with Dr.
23  Gedney's opinion that plaintiff did not suffer from PD. As further support, defendants argue that
24  the "clinical features of PD and Parkinsonism are indistinguishable." (ECF No. 67 at 8-10.)

25  Defendants are correct that plaintiff fails to establish that Dr. Gedney's diagnosis, and the
26  treatment prescribed by both Dr. Gedney and Dr. Marks, fall outside the bounds of accepted
27  medical standards. Plaintiff disparages Dr. Gedney and Dr. Marks's diagnostic methods and
28

course of treatment at length, but offers no medical evidence to counter Dr. Doyle's opinion that plaintiff lacked the clinical features of PD.  (*See* Def. Exh. J.)   However, plaintiff need not raise an inference of deliberate indifference on the basis of his course of treatment alone.  *See Zackery*, 299 Fed. Appx. 601 (finding that the course of treatment did not raise an inference of deliberate indifference, and that plaintiff provided no other evidence that defendants to suggest deliberately indifference). Rather, plaintiff alleges in his verified complaint that he witnessed Dr. Gedney and Dr. Marks make statements that suggest deliberate indifference.  (ECF No. 91 at 3; *see* ECF No. 67 at 2.)

Specifically, plaintiff's complaint asserts that Dr. Marks told him that "there's no doubt you have [PD]," and yet refused to diagnose or treat plaintiff accordingly.  (ECF No. 34 at 7.) Because Dr. Marks is a party opponent, plaintiff's testimony regarding his statements can be admitted for the truth of the matter asserted —that plaintiff clearly suffered from PD—as well as to establish that Dr. Marks was aware of plaintiff's medical condition and consciously chose not to appropriately examine, refer out, or treat plaintiff.  FED. R. EVID. 801(d)(2).  With this evidence, a jury would be well within reason to find that Dr. Marks's decision to ignore his own medical opinion is the definition of deliberate indifference.

Dr. Gedney's alleged statements are a harder case.  Dr. Gedney opined that plaintiff lacked any indication of cogwheeling, rigidity, or bradykinesia—the hallmark signs of PD—and, therefore, may have reasonably believed plaintiff did not suffer from PD.  (Def. Exh. I.)  In this context, her alleged statement that plaintiff would "have to live with it" could have been made in reference to his Parkinsonism, not his PD.  Nor does her statement that if NDOC medical staff "don't diagnose [PD], we don't have to treat you for [PD]" necessarily imply that her diagnosis was improper.  (ECF No. 34 at 6.)

But the relevant inquiry on summary judgment is whether the evidence, when viewed in the light most favorable to plaintiff, wholly precludes a reasonable jury from inferring that defendants were deliberately indifferent.  *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).  While Dr. Gedney's statements could be interpreted neutrally, a reasonable jury could also

interpret her statement that doctors "don't last long" when they "cost the NDOC a lot of money" to suggest that she denied diagnosis, referring out, or treating plaintiff in order to reduce cost and thereby preserve her job. (ECF No. 34 at 6.) This inference is supported by plaintiff's attestation that Dr. Gedney told him PD "is expensive to treat." (*Id.*) In turn, both these alleged statements permit the jury to interpret plaintiff's account of Dr. Gedney's other, possibly neutral statements as evidence that Dr. Gedney resisted providing plaintiff with proper medical treatment for the "non-medical reason" of retaining her job. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582-83 (3d Cir. 2003) (delay of medical treatment for non-medical reasons may constitute deliberate indifference); *Archer v. Dutcher*, 733 F.3d 14 (2d Cir. 1984) (finding genuine dispute as to whether medical treatment was denied for "invalid reasons"); *see Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999) (ignoring medical orders of prisoner's prior physician for reasons unrelated to the prisoner's medical needs may constitute deliberate indifference). Dr. Gedney's awareness of an excessive risk to plaintiff may be inferred from evidence that plaintiff notified her that his symptoms were worsening "exponentially" (ECF No. 34 at 6; Def. Exh. M at 2), and that he had been previously diagnosed with PD (ECF No. 34 at 3; ECF No. 69-1 at 17).

Finally, because defendants have treated plaintiff for Parkinsonism "Parkinson's-like symptoms", they argue that plaintiff's claims that he has been deprived of treatment is "patently disingenuous." (ECF No. 67 at 9.) But plaintiff is not arguing that defendants wholly deprived him of treatment. A more proper characterization of plaintiff's claim is that Dr. Gedney and Dr. Marks were aware that plaintiff did not suffer from Parkinsonism, and yet refused to properly examine, diagnose, and treat plaintiff's neurodegenerative disease. (*See* ECF No. 91 at 6-8.) Conscious disregard of plaintiff's need for proper diagnosis and treatment of his neurodegenerative disease would no less offend the Constitution just because defendants provide treatment for a related, but less costly, disease.

Based on the record before the court, a reasonable jury could find that Dr. Gedney and Dr. Marks were deliberately indifferent to plaintiff's medical needs. Because defendants' qualified immunity argument rests solely on plaintiff's inability to prove an Eight Amendment violation,

the court finds that qualified immunity is improper. Accordingly, defendants motion for summary judgment should be denied as to plaintiff's Eighth Amendment deliberate indifference claims against these defendants.

## IV.   CONCLUSION

For the foregoing reasons, the court finds that plaintiff properly exhausted his claim and filed his complaint within the statutory period. The court also finds that Dr. Aranas did not personally participate in denying treatment, but that plaintiff has provided sufficient evidence to genuinely dispute whether Dr. Gedney and Dr. Marks were deliberately indifferent to plaintiff's medical needs. Accordingly, the court recommends that defendants' motion for summary judgment (ECF No. 67) be granted as to Dr. Aranas, but denied as to Dr. Gedney and Dr. Marks.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 67) be **GRANTED** as to Dr. Aranas;

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (ECF No. 67) be **DENIED** as to Dr. Marks and Dr. Gedney.

**DATED**: July 11, 2018.

_____
**UNITED STATES MAGISTRATE JUDGE**